IIuffin, C. J.
dissent. The useful habit of free consultation between the members of the Court, while I have had the honor of sitting here, has generally resulted in a concurrence of opinion. When my own mind may not have been entirely satisfied with the result of a conference with them, or the reasoning by which my brethren reached it, yet I have been so much impressed with the public importance of giving to the judgments of the Court all the weight of unanimity, and have been so little wedded to any peculiar notions of my own. that I have willingly yielded to my brethren. I have therefore very seldom ventured to dissent from them ; and I should with pleasure adhere to that course now, if what I conceive to be my duty to the law would allow me. Believing, however, that the decision of the Court is against .prin-cipie, and not supported by any just reasoning, I feel bound to express my opinion against it.
I have to remark, that, as far as my brethren are influenced by the part which Jameson is supposed to have taken in the management of the suit, brought by Rhine-hardt against the present plaintiff, they would find upon a closer examination, there is some mistake of fact, which makes it unsafe to put any part of the case on that, point. The case, indeed, states that the suit was brought in the County Court of Haywood, and that Jameson was present at the trial, and then instructed the counsel and treated the case as his own ; and from a judgment against him in that Court, that Hunter appealed to the Superior •Court, and thence removed the trial to Macon. That *260 would be all plain enough, if it were not contradicted by the record of that suit, which is annexed to the case and expressly made a part of it. From that it appears, that the suit was brought by Rhinehardt originally in the Superior Court of Haywood, and that it was removed by the defendant, Hunter, before any trial, to Macon: so that there was no trial in the County Court or in any Court before the final trial in Macon, at which the present defendant could have assisted, or done anything to induce the belief that he treated the cause as his own, and thereby sanctioned what had been done by Hunter in warranting the clock, as having been done at his request. But this is a matter of little moment, as it affects only the present parties; and I should not advert to it, were it not to let the parties see, that I had duly ascertained the facts of their case, as well as considered the matter o; law. To the general question of law involved in the case, I will now proceed.
The plaintiff declares upon a contract of indemnity., and also for money paid to the use and at the request oi the defendant. He could declare in no other way; and both counts involve essentially the same matter both oí' law and fact. He alleges, in support of them, that the defendant employed him as an agent to sell clocks for the defendant, and that he sold one to Rhinehardt and warranted it to be of good quality, and has been compelled to pay thereon a sum of money as damages and costs, for which he brings this suit. The defendant raised objections, questioning in several forms the authority of the plaintiff to make a warranty upon a sale. But I agree clearly, that, it not appearing that the agent was forbidden, he had the authority to give the principal’s warranty, both as between the purchaser and the principal, and the latter and the agent. I agree, moreover, that in such case, if the agent do not disclose the principal at the time of the sale, yet the purchaser may, upon discovering the principal, suq him; for it *261 is the warranty of the owner, and is annexed to the contract of sale, which is made by the principal through his agent. Further, I yield that the purchaser may, in this last case, sue the agent on the warranty ; because, although he was in fact acting as agent, yet the purchaser was not informed of it, but dealt with him as if he had been the owner, and therefore, had a right to treat him as contracting for himself. Therefore, I am willing to say that the warranty was that of each — the principal and the agent; and to treat the case precisely as if the agent had expressly given the warranty of the principal, and also expressly given his own: which, I think, is going as far as the plaintiff could ask. Certainly, nothing less will answer the plaintiff’s purpose.^ For, if he was forbidden to warrant, although the principal might still be liable to the purchaser, upon a warranty made by the agent, yet the agent would be answerable over to the principal for breach of instructions ; and, consequently, could not recover for a loss upon a warranty, which he volunteered of his own. So, if the agent had authority from the principal to warrant, and did warrant in the name of the principal, and not for himself, then he, the agent, would not be liable thereon, and there could have been no recovery in the action brought, against him. It follows, then, that Hunter must be taken to have given his own warranty, either by itself, or in addition to a warranty of his principal. It is for damages, sustained by reason of a warranty of the properties of the clock, which bound him personally, that he brings this suit. Now, it is clear, the defendant cannot be bound to -indemnify him against the consequences of such a warranty, unless the plaintiff entered into it, at the instance of the defendant. In the same manner, a request from the defendant must be shewn in order to support the count for money paid to the defendant’s use. For, if the 'plaintiff paid the money officiously, that is, without being bound for it, or became bound for it officiously, that is, without the defendant’s *262 .request to him to become thus bound, he cannot recover from the defendant, by reason of the elementary principle, that no man can make another his debtor without the consent of the latter. I have, then, to ask, where is the evidence of such a request ? I see none at all. And, in this, consists the difference between my brethren and myself. There is, unquestionably, no express evidence of a request to the plaintiff to give his, the plaintiff’s, warranty to the purchaser as to any quality of the clock. That is not pretended. But it is said that the plaintiff subjected himself to the action of Rhinchardt, upon a contract made by him for the defendant, which by his agency the defendant authorized him to make ; in other words, that by appointing an agent to sell a personal thing, not requiring a deed, a request is implied in law to the agent to give his warranty, as to the qualities of the article sold. For that position I know not of any authority whatever, ei> eepting only the opinion of my two brethren in this case. I admit, that, by the appointment of an agent to sell a personal chattel, an authority to war-rant is implied; but it is an authority to warrant in behalf and in the name of the 'principal. The dispute in the cases is, whether the agent had authority to bind the principal, where the agency was special, or there were instructions to the agent not to warrant. But in not one single case before this, that I have seen, was it ever contended, that from the appointing of an agent, not only an authority is implied to give the warranty of the principal of the goodness of the article,' but .also a request to the agent is to be inferred, to give his own warranty in lieu of the principal’s, or upon the back of it. I believe, if there was such a case, my brethren would have found it. At all events, none such has been cited by them. It is true, the case 'of Adamson v.. Jarvis, 4 Bing. 66, is relied on for this purpose. But I must say that it strikes me with much surprise that it should be. Not that I deny that case; for 1 think it good law, audit has been recognized by this Court in Ives v. Jones,,3 Ired. *263 538. But while I admit that case to be law, I am surprised that it should be adduced on this occasion; because it relates to a totally different subject. There, an auctioneer was requested by the defendant to sell certain goods as his property,, and he- did so, and paid the proceeds to the defendant, and then the owner recovered the value from the auctioneer, who. thereupon brought that suit to recover back what he had lost. Clearly, he recovered properly -r for the law implies a warranty of title from every vendor of personal chattels, and there was an express request from the defendant to the plaintiff^thcre, to do the act on which the plaintiff’s liability arose, namely, to sell the property as- the defendant’s ;. which amounted to a conversion as against the true owner, though an innocent one on the part of the agent Chief Justice Best, therefore, did not speak loosely, but well weighed his words, when he said, “ that every person who employs another to do an act,” (which is not unlawful,) “ undertakes to indemnify him for that act. The defendant there expressly “ employed the plaintiff t© do the act” he did, and no more nor less j and therefore the defendant was bound to assume the burden of all the consequences of that act.”' But how that is an authority to shew, that employing an agent to sell goods, and giving him power to make the sale with the warranty of the owner as to the qualities of the goods, amounted to an implied request to the agent to give his warranty as to the-qualities, I am at a loss to conceive- The case cited from Connecticut, cannot, I think, be law, It lays down this-doctrine — that if an ágen-t be sued on a contract made in the course of his agency, though the suit be without cause and he succeed in it, the principal is bound to refund all his expenses, and indebitatus assumpsit will lie for them. This is binding the principal for ail the wrongful suits other people may think proper to bring against one who has been his agent, for an alleged, and falsely alleged, injury by some act, done in the course of the- *264 .agency. Even the most express covenant, that of quiet enjoyment for example, is by construction limited to wrongful disturbances, unless a particular person be expressly named. In the case of principal" and surety, if the principal pay the debt, and then the creditor sue the surety for it also, and the payment by the principal be established, so that there is judgment for the surety, cei’-tainly there is no ground for compelling the principal to reimburse the surety’s costs. It would be ruinous; for such groundless suit might be repeated over and over, and the principal by paying the debt, did all that ho contracted to do, or could be bound to do. But to return to tire case of Adamson v. Jarvis. The objection there, and in Betts Deems v. Gibbins, 2 Adol. & El. 57, was that the plaintiffs could not recover, because they were tort feasors, and therefore that the most direct request or promise of indemnity by the defendant, for the wrongful act, would not sustain the action. But here, the enquiry is, whether the plaintiff gave his warranty, 'on which Rhinehardt recovered, at the request of Jameson. There being no such express request, it is said that it is virtually included in the unrestricted agency to sell; be7 cause, from it “ the law implies a guaranty, or promise on the part of the principal to indemnify the agent from all the legal consequences that follow the sale.” Certainly, this last position, that a contract of indemnity is inferred against the consequences of making the sale, is perfectly right, because the agent was employed to make the sale. I should never think of gainsaying that. But what are the consequences to an agent from making the sale : what can they be? Why, only a liability to the owner (in case they were not the property of the principal) for the value of the things sold, either in trespass or trover, or an action for money had and received for the price, and that is all. In respect of the qualities of the things, the agent cannot.be liable at all from the sale merely. He can only be made liable by something in ad *265 dition to the sale itself; by a fraud in misrepresenting the quality or concealing defects knowingly, or by his own engagement as to the quality. I think my brethren, when they say that from an agency to sell, the law implies a promise of the principal to indemnify the agent “ from all the legal consequences that follow from the sale,” cannot mean all their words import; for certainly for a fraud in making the sale, both principal and agent (as one of its legal consequences) would be liable to the purchaser, as wrong-doers ; and yet, between them, the law would enforce no promise of indemnity, nor contribution without a promise. Then, as to the remaining method by which an agent may become liable to suffer for a defect in the thing, as a consequence from the sale, which is, by annexing his own warranty to the sale, I must say, that my brethren have merely assumed or affirmed, that the law implies a counter guaranty from the principal, and have not sustained it by adjudged cases, nor proved it by argument. They say, indeed, that it would be unjust that the loss should fall on the agent instead of the principal, “ for whom and by whose authority he was acting.” But that seems to be plainly begging the question ; for, while it is admitted, that he is acting for, and by the authority of, the principal, in making the sale and giving the warranty of the principal — because to that extent there are many cases — yet it remains to be proved by some one case, that in giving his own warranty the agent was also acting by the authority, or at the request of the principal. Wherefore should the law imply, that the principal requested the agent to become his surety, that the articles were of good quality 1 How can it be so implied ? If such a request to an agent to sell shall be implied, why not imply also an authority to him to get a third person to give his warranty in aid, if the agent should happen to think it useful ? The one is just as much as the other within the scope of a mere authority to sell, which is all that is *266 given in words. That implies, indeed, a power to warrant for the owner, but, as it seems to me, not to give the warranty of any body else. It is to be feared, that a notion of the justice of the case, as it is called, arising from the hardship of making the agent bear a loss, when he could not derive a profit from' lids- warranty,, may render us forgetful that ihe law requires, that there shall not only be a loss by one person for another, but also that such loss should be occasioned by some act done at the request of the other, before the latter will be bound to make the loss good.. It is not sufficient, that the agent should intend to promote the interest of his principal by giving his warrant)', unless it be at the instance of the principal. That consideration may move a generous mind to step forward in exoneration of the man,, who designed to befriend him- That is equally true of many other cases'of voluntary payments-for the benefit of others. But still there can be no recovery unless there has been a request. Upon this very question of principal and agent, this Court held, in one of the hardest cases that ever cam© before a Court of Justice, Hines v. Butler, 3 Ired. 307, where an agent knew Iris principal- was pressed for money, and, in order to raise it for him, he endorsed a-note, which be had to collect, or endorsed a note for a debtor of the principal for the purpose of getting it discounted at bank, and thereby the agent sustained loss, that the- principal was not bound to indemnify the agent, although,.as the Court expressly says, the agent “ did then believe h&was doing the best for the principal’s interest.” Why was that ? Because the principal had not given the agent authority to. endorse, but only to, collect the note, payable to the principal, and had not requested him to endorse the debtor’s note negotiable at bank. Therefore^ that loss from the officious acts of the agent, though with the very best intentions, in reference, as he thought, to the wishes and the interest of the principal, was thrown altogether upon the agent. How can this be distinguished. *267 from that case ? Here the agent was authorized to give the warranty of the principal, and not his own, as in the other case he had power to collect the note, and not endorse it. Upon .the ground, then, that there was' no request, the action must fail in point of law. But it is extremely probable that it ought also to fail, in point of that sort of justice, which, it is supposed, may be on the plaintiff’s side. For how can we tell what might have been the result, if the plaintiff had not given his warranty to Rhinehardt, so that the latter would have been compelled to sue Jameson on his warranty ? In that case Hunter might have been called as a witness for Jameson, and might have proved, that he sold without giving a warranty of the principal as to the quality of the clock, or that in fact and truth the quality was such as was warranted. There was, doubtless, a real contest upon one or both of those points in Rhinehardt’s suit, as must be supposed from the pertinacious defence of it. A principal has a direct interest in the evidence, to that extent, of the agent, who is ever the most material witness to those points, as he best knows, what verbal contract he did make, and also is, probably, best acquainted with the properties of the thing sold- At all events, this interest of the principal in the evidence of the agent furnishes a strong reason, why the law should require direct evidence of a request to the agent, to give his own warranty, and not imply it, from the mere fact of agency; and as there is no adjudged case found, in which it has been implied, it is very conclusive to my mind, that it ought not, and cannot be implied,
[Per Curiam. Judgment affirmed.